## MARIAN v. CHEMICAL PRODUCTS, INC.

1. BILLS AND NOTES — CONSIDERATION — EVIDENCE — QUESTION FOR JURY.
   Evidence in action on promissory notes presented question for jury as to whether or not there had been consideration therefor.

2. TRIAL—COMMENTS OF TRIAL COURT.
   Comments of trial judge as to matters involved in trial of action to collect 2 promissory notes *held,* justified under facts shown in the case.

3. APPEAL AND ERROR—FRAUD—PLEADING.
   Defendant maker's claim of error in trial court's ruling whereby he denied affirmative defenses of fraud in consolidated action on 2 promissory notes and in ruling out proofs in relation thereto *held,* without merit, where pleading in such respect consisted of conclusions, not supporting facts, and trial court did, later in the trial, permit proof of prior verbal agreement claimed to have been made before the notes were executed.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 8 Am Jur, Bills and Notes § 1042.
[2, 4–6] 53 Am Jur, Trial § 76 *et seq.*
[3] 3 Am Jur, Appeal and Error § 1002 *et seq.*

4. TRIAL—COMMENTS OF TRIAL COURT—INCONSISTENT DEFENSES.

Comments of trial court relative to inconsistent defenses presented by defendant whereby it both denied execution of the notes and admitted execution but denied liability *held*, not to have constituted reversible error.

5. SAME—COMMENTS OF TRIAL COURT—FINANCIAL CONDITION OF DEFENDANT CORPORATION.

Comments of trial court relative to financial condition of defendant corporation at time of execution of promissory notes sued upon *held*, not to have constituted prejudicial error under circumstances shown.

6. SAME—COMMENTS OF TRIAL COURT—FRAUDULENT CONVEYANCES.

Execution of chattel mortgage to plaintiff, covering all of corporate defendant's personal property, at time of loan to defendant of money and transfer of other assets, did not enhance the position of its creditors, where corporation had $210 in cash and accounts payable of $4,816.01, hence, comments of trial court relating to inferences that defendant had participated in a transaction with the illegal purpose of hindering, delaying and defrauding creditors did not constitute such prejudicial error as to deny such defendant a fair trial.

Appeal from Wayne; Miller (Guy A.), J. Submitted January 4, 1956. (Docket Nos. 15, 16, Calendar Nos. 46,255, 46,256.) Decided March 1, 1956.

Assumpsit by Catherine Marian against Chemical Products, Inc., a Michigan corporation, for balance due on note. A second action of similar nature consolidated upon trial and appeal. Judgments for plaintiff. Defendant appeals. Affirmed.

*Frank P. Neaton,* for plaintiff.

*Kahn & Kahn* (*Kenneth F. Kahn,* of counsel), for defendant.

SHARPE, J. Defendant, Chemical Products, Inc., appeals from the entry of 2 judgments against it by the circuit court of Wayne county following a trial by jury, one judgment being in the amount of $3,750

and the other judgment in the amount of $1,500. The record shows that on December 30, 1949, plaintiff commenced an action in assumpsit on a promissory note executed by defendant corporation, the $5,500 note being secured by a chattel mortgage on the corporate assets of defendant company. Plaintiff's action is for an unpaid balance of $3,720 on the $5,500 note. On September 14, 1951, defendant company filed an answer to plaintiff's declaration in which it denied the execution of the promissory note. Defendant company also filed affirmative defenses, by which it alleges that it obtained no consideration for the sum of $3,000 on the $5,500 promissory note; that said promissory note was obtained by fraud and misrepresentation; that plaintiff is not the real party in interest; that the note as to $2,500 has been paid in full; that the balance of said note in the amount of $3,000 has been settled by an accord and satisfaction, and that:

"Plaintiff's husband, Michael C. Marian and Thomas W. Halloran, president of defendant corporation, were equal half owners of a business known as Muf-L-Cote Plastics Company, which company occupied space as a tenant in a building owned by Michael C. Marian, located at 1625 East Grand Boulevard, Detroit, Michigan, title of which said building stands in the name of plaintiff. That said Muf-L-Cote Plastics Company had ceased to function. That Michael C. Marian was negotiating a lease of said building with other parties and was anxious to get the assets of the defunct Muf-L-Cote Plastics Company out of said building and in storage at some other place without expense to him. That said assets consisted principally of raw materials that had little or no value at the time. * * *

"That in 1946, defendant Chemical Products, Inc., occupied factory premises at 4455 Williams street in the city of Detroit under a lease, and Thomas W. Halloran as president of said corporation was then nego-

tiating to purchase said property and an adjacent piece of property in the immediate rear thereof located on Tillman street in the city of Detroit. That Michael C. Marian offered to lend said Thomas W. Halloran the sum of $2,500 to aid the latter in making said purchase of said real estate, and said Thomas W. Halloran accepted said offer, and purchased said real estate in behalf of said defendant corporation, including said adjacent property.

"That upon completing said purchase, defendant corporation had additional available space, not immediately required for its operations.    *    *    *

"That at the time said Michael C. Marian made said loan of $2,500, he started negotiating with Thomas W. Halloran for the latter to store the said assets of the defunct Muf-L-Cote Plastics Company in the premises of defendant corporation, under an arrangement whereby said Thomas W. Halloran would attempt to dispose of said assets as opportunity presented in the future, said parties to share the proceeds of any sales made, less expenses. That the parties estimated that under favorable conditions they might realize $3,000 net for said assets. That Thomas W. Halloran agreed to the arrangement, and the said personal property of Muf-L-Cote Plastics Company, of which Thomas W. Halloran owned 1/2 and Michael C. Marian the other half, were moved and stored in the premises of the defendant corporation.

"That shortly before September 19, 1946, said Michael C. Marian said to said Thomas W. Halloran that he felt that he should have security from defendant Chemical Products, Inc., for the said $2,500 loan, and that inasmuch as he was considering settling in California that he would like to have his prospective profits in the Muf-L-Cote assets included in the note to be secured by the mortgage. That Michael C. Marian stated that he wanted the deal set up in his wife's name as was his custom on business transactions. Said Michael C. Marian stated to said Thomas W. Halloran that the $3,000 that he wanted included

in the note, and that represented the prospective profits of both Thomas W. Halloran and himself should furthermore be set up in his wife's name because the defendant Chemical Products, Inc., had nothing to do with the profit arrangement entered into between the said 2 individuals, and furthermore that it would be understood and agreed that the $3,000 in said note would merely be evidence of the prospective profits and not a binding obligation on the part of defendant Chemical Products, Inc. * * *

"Defendant alleges that said Thomas W. Halloran has been unable to dispose of any of the said personal property of said Muf-L-Cote Plastics Company, stored as aforesaid in the premises of defendant, and that no profits have been realized out of said personal property, and furthermore neither plaintiff or her husband Michael C. Marian has contributed anything to the storage expense of said personal property and refused to pay any storage expenses thereon.

"That defendant Chemical Products, Inc., received no consideration whatsoever for said $3,000 included in said note, exhibit A. * * *

"That said note, exhibit A, and the mortgage securing the same with respect to the item of $3,000 therein included, plus interest thereon, was obtained by fraud and misrepresentation on the part of plaintiff and her husband Michael C. Marian. * * *

"That said Thomas W. Halloran and said Michael C. Marian subsequently entered into an agreement whereby and pursuant to which said Michael C. Marian relinquished and abandoned his interest in said partnership personal property in consideration of Thomas W. Halloran undertaking to get rid of said personal property as junk, or to make other disposition thereof without any further expense to said Michael C. Marian, and it was agreed by and between Thomas W. Halloran and Michael C. Marian that on payment by defendant Chemical Products, Inc., of the last instalment payment of said loan of $2,500 plus interest, that said mortgage note and said chat-

tel mortgage would be marked paid and discharged. That said agreement was made and entered into subsequent to the institution of this suit, and in, to-wit, the early part of January, 1950. That pursuant to said agreement Thomas W. Halloran, in behalf of Chemical Products, Inc., made the final payment on the said loan of $2,500, in the sum of $200, plus interest of $8.33 on, to-wit January 31, 1950, and under date of January 31, 1950, wrote said Michael C. Marian the following letter:

"January 31, 1950

" 'Mr. M. C. Marian
300 Whitmore Drive
Detroit 3, Mich.

" '*Dear Mr. Marian:*

" 'As arranged, we enclose herewith check in the amount of $224.09, which is in final payment of the collateral note for $2,500, with interest in the amount of $8.33, together with interest on the unsecured note for $378.32 in the amount of $15.76, making a total of $224.09, as above.

" 'Yours very truly,
CHEMICAL PRODUCTS, INC.,
THOS. W. HALLORAN, President
TWH-ge'   *   *   *

"Defendant says that plaintiff Catherine Marian does not now have and never has had any interest in said partnership assets or in said mortgage and note; that she was and is merely the nominee of Thomas W. Halloran and Michael C. Marian to act in a trust capacity, and is not the real party in interest in this action. That Michael C. Marian is the real party in interest."

On September 14, 1952, Thomas W. Halloran, president of defendant company, filed an affidavit in the above cause, the essential part of which contains the following:

"Deponent denies that said defendant, Chemical Products, Inc., executed and delivered said note, sued on in this action.

"Further deponent says that it was beyond the power and scope of said corporation to execute and deliver said note.

"Further deponent says that the said note, executed by officers of defendant corporation, was beyond the scope and authority of said officers to do so."

On February 28, 1951, plaintiff filed her declaration in the circuit court of Wayne county on a promissory note in the amount of $1,500 executed by defendant corporation. The declaration contained the following:

"That on the 19th day of September, 1946, at Detroit, Michigan, defendant, for value received, made and delivered to plaintiff its promissory note in writing, dated on that day, whereby it promised to pay to the order of plaintiff on March 19, 1949, the sum of $1,500 at the National Bank of Detroit, Main Office, 660 Woodward avenue, Detroit, Michigan, or at such other place within or without the State as the holder of said note might from time to time designate. A copy of said note is hereto attached as plaintiff's exhibit 'A', together with authorizing resolution."

Defendant filed an answer to plaintiff's declaration in which it denied the execution of the promissory note, and by way of affirmative defenses alleges that:

"Defendant corporation was in the business, among others, of manufacturing rubber cement. Defendant corporation obtained an order from Nash Kelvinator Corporation for, to-wit, 40,000 gallons of rubber cement, prior to September 19, 1946. * * *

"That Michael C. Marian urged and prevailed upon said Thomas W. Halloran to use said reclaimed rubber asset of Muf-L-Cote Plastics Company, after required processing, as a raw material in the manufacture by defendant of the rubber cement, with which to fill the order received by defendant from

Nash Kelvinator Corporation on the basis of a participation in the profits received from said order, and Michael C. Marian's profits in said order, under said arrangement, was estimated at the sum of $1,500.

"That pursuant to said arrangement said Thomas W. Halloran arranged for the processing of said reclaimed rubber with a processing firm at a cost of 42 cents per gallon for the processed material, which material amounted to approximately 60 drums of 54 gallons each, and which charge was ultimately paid by defendant corporation, as said Michael C. Marian neglected and refused to pay his share thereof, being ½ of said cost.  *  *  *

"That subsequent to September 19, 1946, it developed that the raw material manufactured out of said reclaimed rubber was not suitable for the manufacture of rubber cement. The said Nash Kelvinator Corporation refused to take delivery of said cement under said order placed by it, and the merchandise for the fulfillment of that order was turned back on defendant corporation, and the same is now in storage in defendant corporation's premises. * * *

"That said note for $1,500 was given to plaintiff merely as evidence of a conditional participating profit interest in a prospective business deal on the part of plaintiff's husband and said Thomas W. Halloran, and not as evidence of any fixed indebtedness owing by defendant corporation to plaintiff.

"That defendant corporation received no consideration whatsoever for said note, and in addition to that laid out ½ of the processing charges on the reclaimed rubber, for which Michael C. Marian was obligated to pay ½ in good faith, and said Michael C. Marian and his wife, the plaintiff, have neglected and now refuse to pay said ½ cost of said processing work.

"That defendant corporation was wholly unauthorized under the statutes and laws of the State of Michigan to execute an accommodation note without any consideration to it, and for the accommodation of Michael C. Marian and his wife, the plaintiff

in this action, and that the giving of said note was an
*ultra vires* act on the part of defendant corporation
and wholly void. That Michael C. Marian and Cath-
erine Marian, the plaintiff in this cause, stated and
represented to defendant corporation and to Thomas
W. Halloran, in his individual capacity, and as pres-
ident of defendant corporation, that said note would
be held by plaintiff merely as evidence of what Mi-
chael C. Marian had coming out of said deal, and
that the same would not be treated and used as an
enforceable obligation of defendant corporation.
That defendant corporation, Thomas W. Halloran
and Gladys Halloran, officers thereof, relied on said
statements and were deceived thereby, to the detri-
ment of defendant corporation."

Thomas W. Halloran, on September 14, 1951, filed
an affidavit in the above cause similar to the affidavit
filed in the action on the $5,500 promissory note.
The causes were combined for trial before a jury.
During the progress of the trial, the trial judge de-
nied defendant the right to introduce evidence of
fraud or misrepresentation for the following reason
as stated by him:

"Well, the special defense of fraud is not so plead-
ed as to permit the introduction of any evidence
on that subject. You cannot plead fraud merely by
saying fraud. That is all that the answer of the
defendant does. In order to plead fraud, you have
got to plead the facts from the conclusion of—the
legal conclusions that fraud exists, flows; and there
is nothing of that sort in Mr. Kahn's pleadings.

"Therefore, his special defense of fraud in the in-
ception of the notes is not in the case."

However, the trial court permitted defendant com-
pany to introduce evidence in support of the allega-
tions stated in its affirmative defenses. At the con-
clusion of all testimony the trial court instructed the
jury as follows:

"Now the defense rests upon a claimed agreement that was made between Mr. and Mrs. Marian and Mr. and Mrs. Halloran in August, 1946. The position of the defendant finally boils down to a statement that was made by Mr. Kahn during discussions back and forth in the absence of the jury. And that final concise statement reduces itself to this. This is a quotation, and it starts with a question that I asked:

"*'The Court:* Well, I guess the most concise statement would be that it is the position of the defendant that these 4 documents in writing were inconsistent with the antecedent verbal agreements between the parties, and therefore the 4 documents in writing fall and the antecedent verbal agreements govern the situation.

"*'Mr. Kahn:* That is correct.

"*'The Court:* That is your position?

"*'Mr. Kahn:* That is my position.'

"The position then is substantially to the effect that the written documents, wherever they come in conflict with the previous verbal agreement made 6 weeks before the documents were signed, are governed by the verbal agreement. Now in that connection it is a fair question for anyone considering that position to ask: 'Well, if the verbal agreements were to govern, why did the Chemical Products Company sign the written agreements?' And, I think that is a fair question for the members of the jury to bear in mind considering the issues in this case.

"I will say to you in general that I am leaving to you the question as to whether there was an antecedent agreement of the nature that is claimed by this defendant corporation, or whether there was not any such antecedent agreement. If there was an antecedent agreement made as the defendant corporation, represented by Mr. Halloran and Mrs. Halloran, claims,—then that antecedent agreement, if you find that it has been proved by a fair preponderance of the evidence, would warrant you as members of the jury in bringing in a verdict in these 2 cases of no cause of action.

"Now, what was the antecedent agreement that is claimed to be supported by the testimony of those 2 witnesses? I have had a great deal of difficulty in ascertaining what the agreement is that the defendants claim was made. I have here some requests to charge prepared by the defendant, through Mr. Kahn. The first request to charge is:

" 'If you find from the evidence that the $5,500 note and the mortgage securing the same in the same amount were delivered pursuant to an agreement, to which Catherine Marian, plaintiff, was a party, that $3,000 in amount thereof would be ineffective as a binding and valid obligation of the defendant, Chemical Products, Inc., then your verdict will be no cause for action in favor of the defendant.'

"Now in connection with that request to charge, that is based upon the claim of the defendant, based on Mr. and Mrs. Halloran's testimony, that in August of 1946 it was verbally agreed between those parties that as to $3,000 the Chemical Products Company would not be held liable by Mrs. Marian. In accordance with that request, if you find affirmatively that that agreement was made, that would justify you in bringing in a verdict of no cause of action on your part of the case as to the $5,500 note.

"The next request to charge is different:

" 'If you find from the evidence that the $5,500 note, and the mortgage securing the same, were delivered pursuant to an agreement to which Catherine Marian, plaintiff, was a party, that $3,000 in amount thereof would not be effective as a binding and valid obligation on the part of the defendant Chemical Products, Incorporated, except on the contingency that the resin materials of the partnership Muf-L-Cote Plastics Company would be sold by the defendant corporation, and you further find that said materials were not sold, then your verdict will be no cause for action in favor of the defendant.'

"That request is different from the first request. The first request is based on the claim that the

agreement as to the $3,000 would not be effective at all under any circumstances. That is, under the first request to charge the agreement that is claimed was that under no circumstances would Mrs. Marian hold the Chemical Products Corporation on that $5,500 note. The second request is that the testimony of Mr. and Mrs. Halloran establishes that the agreement was that the $3,000 of the $5,500 note would not be binding upon the Chemical Products Company unless the materials turned over by the Muf-L-Cote Company under the bill of sale were sold; and if that contingency happened, then the Chemical Products Company would be liable. So, the number 2 claim is that it is not an agreement to make the $3,000 totally uncollectible under any and all circumstances, but it is an agreement to make the $3,000 collectible in the event that the material turned over was sold. So the 2 claims are different and are inconsistent.

"The third request is:

" 'If you find from the evidence that the $1,500 note was delivered pursuant to an agreement, * * * that it would be ineffective as a binding and valid obligation on the part of the defendant, Chemical Products, * * * then with respect to this note, your verdict will be no cause for action.'

"And that is based on the theory that the testimony of those 2 witnesses establishes affirmatively that there was an actual verbal agreement that Mrs. Marian would not collect the $1,500 note. That is, there was an absolute agreement that that note would not be collectible.

"The next request to charge is to this effect:

" 'If you find from the evidence that the $1,500 note was delivered pursuant to an agreement, to which * * * Catherine Marian was a party, that it would be ineffective as a binding * * * obligation * * * except on the contingency that the rubber materials of the partnership, Muf-L-Cote Plastics Company would be sold by the defendant corporation, and you further find that said materials.

were not sold, then your verdict will be no cause for
action in favor of the defendant.'

"That is based on the theory, not that the note was
not collectible under any circumstances whatever,
but that the note would be collectible if the material
was sold.

"So, that the third and fourth requests to charge
are inconsistent in their statement. You are asked
to find, on the same testimony by the same witnesses,
that either one agreement was made or the other
agreement was made, but the defendants do not bind
themselves or take any definite position as to which
one they actually want you to find. The only point
of agreement among all those 4 requests is the re-
quest that the jury find a verdict of no cause of ac-
tion, and in that point those requests are all con-
sistent.

"The next request, number 5, is a request based
upon the claim that the $1,500 note was an accom-
modation of the person to whom he gives the note,
but on the distinct understanding that as between
those parties the note is absolutely invalid, abso-
lutely not binding. And, if the accommodation maker
is compelled to pay the note to a subsequent good-
faith purchaser of the note, then the accommodation
maker can get back what he pays on his note from
the one to whom he gives the note. That is a third
position that the defendants claim is supported by
the testimony of Mr. and Mrs. Halloran; and I
charge you as a matter of law that there is no evi-
dence in the case whatever that would justify the
jury in finding that the agreement was made. So,
that agreement is not given to you for your consid-
eration."

The jury returned a verdict in each case in favor
of plaintiff in the amount of $3,750 and $1,500, and
judgments were entered thereon on November 4,
1953. Defendant filed motions for a new trial in
each of the above cases. On December 23, 1953, the
trial court entered orders denying the motions. On

December 31, 1953, defendant filed notices of appeal in each case. Upon appeal defendant urges that the notes are not valid as to the unpaid balances, and that no liability exists as a result of their execution.

Defendant also urges that there was no consideration for the $3,000 portion of the $5,500 note; that said note to the extent of $3,000 was an accommodation instrument on the part of the defendant, and that there was no consideration for the $1,500 note.

It appears that in August, 1946, plaintiff and her husband, Michael C. Marian, and Thomas W. Halloran and wife, Gladys E. Halloran, verbally agreed that the assets of the Muf-L-Cote Plastics Company, a partnership composed of Michael C. Marian and Thomas W. Halloran, were to be transferred to the defendant corporation; that the defendant corporation would execute a note in the amount of $5,500 payable to plaintiff and secured by a chattel mortgage on the personal property of the corporation, and one unsecured note for $1,500. There is evidence that Michael Marian's share of the partnership assets of Muf-L-Cote Plastics Company had an estimated value of $3,000. These assets consisted of a machine and certain resin materials. There is evidence that the partnership also had on hand approximately 25,000 pounds of crude rubber with an estimated value of $3,000, 1/2 of which rightly belonged to Michael Marian. All assets were turned over to defendant corporation by a bill of sale executed by Michael C. Marian and Thomas W. Halloran. In our opinion the question of consideration for the promissory notes was a proper subject for consideration by the jury.

It is also urged that comments made by the trial judge in the presence of the jury were prejudicial to the defendant. We have carefully examined the record and conclude that the remarks made by the trial judge were justified under the facts shown in

this case. It is also urged that the trial court erred
in holding that defendant could not avail itself of
its affirmative defenses of fraud and in ruling out
proofs in relation thereto. It appears that during
the progress of the trial, the court made the follow-
ing ruling:

"*The Court:* Well, the special defense of fraud is
not so pleaded as to permit the introduction of any
evidence on that subject. You cannot plead fraud
merely by saying fraud. That is all that the answer
of the defendant does. In order to plead fraud, you
have got to plead the facts from the conclusion of—
the legal conclusions that fraud exists, flows; and
there is nothing of that sort in Mr. Kahn's pleadings.

"Therefore, his special defense of fraud in the
inception of the notes is not in the case."

However, the court at a later period during the
trial permitted defendant to offer evidence of a
prior verbal agreement claimed to have been made
in August, 1946. We find no merit in this claim.

It is next urged that the trial court's charge and
instructions to the jury were misleading and con-
fusing, and reflected his personal prejudice and
biased attitude, in that he intimated to the jury
that defendant's requests to charge were inconsistent
without commenting upon the right of defendant to
submit inconsistent defenses. It is to be noted that
Thomas W. Halloran made an affidavit in each case
denying that defendant company executed and de-
livered the promissory notes sued on in the above
actions. In its affirmative defenses defendant ad-
mits the execution of the promissory notes, but
claims that $3,000 of the $5,500 note and the $1,500
note were not to become obligations of the defendant
unless and until certain assets of the Muf-L-Cote
Plastics Company partnership were sold for a price
sufficient to pay the so-called accommodation notes.
In view of the pleadings and evidence introduced

by defendant, the trial court was justified in commenting on the inconsistent claims of the defendant. We have carefully examined the comments of the trial judge and do not find any reversible error in what was said by the trial court.

It is also urged that the trial court committed reversible error in its charge to the jury in stating facts or misstating facts which were not supported by the evidence, in that in his charge and instructions to the jury, the trial court made the statement that, "Chemical Products Company was hard up enough for money so that it was asking for a loan of $2,500 cash," and also stated to the jury that the defendant went to the "trouble of having a financial statement prepared by a firm of accountants," and "the papers were to be executed for the protection both of the Chemical Products Company and of Mr. Marian and Mr. Halloran." The record shows that Thomas W. Halloran informed Michael Marian that he needed $2,500 to purchase some vacant property. The record also shows that defendant's balance sheet as of July 31, 1946, shows cash on hand in the amount of $210, with accounts payable of $4,816.01. Moreover, the financial statement was prepared by defendant's accountant. It might have been more diplomatic for the trial court to have stated that defendant company was lacking in ready cash to supply the wants of its creditors, but under these circumstances we do not find that the trial court committed prejudicial error.

It is also urged that the trial court erred in its charge and instructions to the jury by placing before it issues that were not involved in the case, in that during the trial, the following occurred:

"*The Court:* Well, you were asking something about the reclaimed rubber. Now, as far as this case is concerned, the execution of that bill of sale put the legal title to that property in the Chemical

Products Corporation, and it thereby immediately became subject to the terms of the chattel mortgage going from the Chemical Products Corporation to the plaintiff in this case.

"*Mr. Kahn:* We are setting up equitable defenses, —affirmative defenses against that, which we have a right to do under the practice in Michigan; and in these affirmative defenses, we say that the whole transaction, the bill of sale, the mortgage back, and $3,000, of the note, were made with the definite understanding and agreement they would (were) not to be effective and binding on this company.

"*The Court:* Well, as to that, Mr. Kahn, I do not think that is available as a defense to you anyway, because—that is, it is not available under inferences that can be drawn from the testimony that has been given by your witnesses in this case. If the testimony given by your witnesses is taken at full face value in connection with the schedule and this financial statement connected with the chattel mortgage, then it is a legitimate conclusion that the whole transaction undertaken as Mrs. Halloran testified for the protection of the Chemical Products Corporation might well have been a transaction with the illegal purpose of hindering, delaying and defrauding creditors, and the chattel mortgage recites that there were creditors of the Chemical Products Corporation on September 19, 1946.   *   *   *

"*Mr. Kahn:* Your Honor has raised the question of a fraudulent conveyance in the form of a chattel mortgage that creditors of Chemical Products Company might take advantage of. There is no creditor here. There is no issue like that in the case.

"*The Court:* That is true, and the statute of limitations has now run against all the creditors whose claims were set up, were recited in the chattel mortgage, back in 1946."

It is a rare occasion during the trial of a cause that some evidence does not creep into the record or some statement made that is not germane to the issues involved. In such occasions, it becomes the

duty of an appellate court to determine if the error is prejudicial to any of the parties involved. In the case at bar the record shows that shortly before the promissory notes were executed, defendant company had in cash the sum of $210, and accounts payable in the amount of $4,816.01, yet at the time of the execution of the promissory notes defendant gave plaintiff a chattel mortgage covering all of its property. Such an act on the part of defendant did not enhance the position of its creditors. Undoubtedly the trial court had these facts in mind when he made the statements above quoted. It is true that the position of defendant's creditors was not an issue in the cause, but in our opinion the statement made does not arise to the dignity of a prejudicial error. In our examination of the record we are convinced that defendant had a fair trial.

The judgments are affirmed, with costs to plaintiff.

DETHMERS, C. J., and SMITH, REID, BOYLES, KELLY, CARR, and BLACK, JJ., concurred.